UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 12-220-DLB-CJS

GEORGE O. SPOONAMORE, IV,
as County Clerk of Lincoln County, Kentucky, et al.          PLAINTIFFS

vs.                    **MEMORANDUM OPINION & ORDER**

FEDERAL HOUSING FINANCE AGENCY,
as conservator for FEDERAL NATIONAL
MORTGAGE AND FEDERAL HOME LOAN
MORTGAGE CORPORATION, et al.                                  DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I.   INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss, (Doc. # 37) and Plaintiffs' Motion for Partial Summary Judgment, (Doc. # 46). For the reasons set forth below, the Court will grant Defendants' motion and deny Plaintiffs' motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Federal National Mortgage Association (Fannie Mae) and Federal Loan Mortgage Corporation (Freddie Mac) were chartered by Congress to purchase residential mortgages and thereby increase the funds available for mortgage lending. (Doc. # 37-2, at 8). Each charter provides that the entities will be exempt from "all taxation" except that the entities are still subject to taxes on "real property." *See* 12 U.S.C. § 1723a(c); 12 U.S.C. § 1452(e). The tax exemption in Fannie Mae's and Freddie Mac's ("the entities") charters are nearly identical. This "charter exemption" forms the basis of this dispute.

1

Plaintiffs are county clerks in the state of Kentucky, charged under Section142.050 of the Kentucky Revised Statutes with collecting a real estate transfer tax (the "transfer tax) when property is transferred in their respective counties. (Doc. # 1, at 2). That tax must be paid by the grantor of real estate to another party. Ky. Rev. Stat. § 142.050. The entities have granted numerous pieces of property in Plaintiffs' respective jurisdictions, but have claimed the charter exemption each time and refused to pay the tax. (Doc. # 1, at 5). In response, Plaintiffs brought this suit, seeking a declaratory judgment that the charter exemption did not apply to the transfer tax and asking for class certification. (Doc. # 1, at 5-7). They further asked the Court to enjoin the entities from claiming the exemption and force the entities to pay back transfer taxes. (*Id.*). Plaintiffs also claimed punitive damages. (*Id.*). Though separate county clerks had filed similar suits against the entities, all of those claims were consolidated into the present action, and on March 6, 2013, the Court certified this case as a class action, certifying the Plaintiff class as "all Kentucky County Clerks." (Doc. # 55).

The entities eventually filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In that motion, the entities argued that Plaintiffs lacked a cognizable legal claim, as the charter exemption applied and prevented them from paying the transfer tax. (Doc. # 37). Plaintiffs then filed a Motion for Partial Summary Judgment, (Doc. #46), under a similar legal theory to that advanced in their various complaints.

While this litigation was underway, a similar suit was making its way from the Eastern District of Michigan to the Sixth Circuit Court of Appeals. See *Oakland Cnty. v. Fed. Hous. Fin. Agency*, 871 F. Supp. 2d 662, 664 (E.D. Mich. 2012) vacated and remanded sub nom. *Cnty. of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935 (6th Cir.

2013) cert. denied, 134 S. Ct. 353 (2013). Presented with a transfer tax in Michigan that was fundamentally similar to the one at issue in this case, the district court ruled that the charter exemption did not protect Defendants from the transfer tax. *Id.* at 669. Plaintiffs relied on the district court's opinion in both their original complaint, (Doc. # 1, at 8), and in their Motion for Partial Summary Judgment, (Doc. # 46-1, at 11-12). In anticipation of the Sixth Circuit's opinion, the Court stayed this litigation. (Doc. # 71). The Sixth Circuit's May 20, 2013, opinion overturned the district court's ruling. *Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935 (6th Cir. 2013). Afterwards, the Court lifted the stay on July 5, 2013. (Doc. # 78).

After the Sixth Circuit's opinion, the Court requested supplemental briefing from the parties. (Doc. # 85). In their briefing, Plaintiffs redirected their legal arguments to the alleged constitutional infirmities of the charter exemption. (See, e.g., Doc. # 87). The Defendants responded, (Doc. # 88), Plaintiffs replied, (Doc. # 89), and the matter is now ripe for review.

### III. ANALYSIS

#### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss Plaintiffs' claim for failing to state a claim upon which relief may be granted. A complaint need not contain detailed factual allegations to survive a 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). Nor does the 12(b)(6) motion invite the Court "to weigh evidence or evaluate the credibility of witnesses." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The question is whether, assuming all the facts as pleaded in Plaintiffs' complaint are true, Plaintiff is entitled to relief. *Id.* If Plaintiff might

3

be entitled to relief, the motion cannot be granted. If Plaintiff is not entitled to relief, the Court must grant the motion and dismiss the case.

B. <u>Plaintiffs likely lack authority to bring this suit in the first place</u>.

As a threshold matter, it's necessary to dispose of a jurisdictional matter of Plaintiffs' own making. In one of the Defendants' many briefs, they argued that Plaintiffs lack the authority to bring this claim. (Doc. #58, at 31-32). In responding to this argument, Plaintiffs apparently misunderstood what it was, exactly, that Defendants were claiming. Defendants did not argue, and never have argued, that Plaintiffs lack *standing* to bring this suit; they instead argue that Plaintiffs lack *authority* to bring this suit. These issues are not the same.

As it happens, there is little doubt that Plaintiffs do, in fact, have standing under Article III of the Constitution to bring this suit. To have standing under Article III, Plaintiffs must establish the following: (1) that they suffered an injury (2) that there is "a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Each of these factors is satisfied here: first, Plaintiffs have suffered an injury–specifically, deprivation of transfer fees; second, there is an obvious causal connection between Defendants refusal to pay and Plaintiffs inability to receive the fees; and third, a favorable opinion in this case would certainly redress Plaintiffs' injury.

Defendants never contested this fact. What they did contest is whether Plaintiffs have the authority, under Kentucky law, to prosecute this action in the first place. In other words, Defendants argue that Plaintiffs lack the statutory–as distinguished from constitutional–standing. Statutory standing asks "whether this plaintiff has a cause of

4

action under the statute." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n. 2 (1998). This sort of standing is "a matter of statutory construction, not jurisdiction." *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011).

The question presented by Defendants' Motion to Dismiss, then, is not whether Plaintiffs have the constitutional standing to confer jurisdiction on the Court, but whether the revenue statute in question creates a cause of action that Plaintiffs can enforce. The answer to that question is "no."

Under Kentucky law, the "Department of Revenue shall exercise all administrative functions of the state in relation to the state revenue and tax laws...and the enforcement of revenue and tax laws." Ky. Rev. Stat. § 131.030. Plaintiffs have not made a convincing case that the statute, by giving the Department of Revenue "all" the power to enforce revenue and tax laws, somehow left some over for the county clerks. They assert that "[t]he permissive delegation to the Department of Revenue to take certain actions with regard to collection of Kentucky taxes is not exclusive." (Doc. #60, at 14). However, a statute that grants "all administrative functions of the state in relation to...the enforcement of revenue and tax laws" seems the very embodiment of exclusionary. If "all" of the authority rests with the Department of Revenue, then none remains with the county clerks.

The Sixth Circuit has addressed a similar issue and come to the same conclusion. In *Christian County. Clerk ex rel. Kem v. Mortgage Elec. Registration Sys.*, Inc., 515 F. App'x 451 (6th Cir. 2013), the Circuit considered a Kentucky law requiring that mortgage assignments be recorded with the county clerks, and addressed whether those county clerks could enforce that law via the courts. *Id.* at 453. Noting that the county clerks could face some financial hardship through lost fees, the Circuit dismissed the suggestion that

5

the clerks lacked constitutional standing under Article III. *Id.* at 455. However, the Circuit found that the statute provided no cause of action for the clerks. *Id.* at 458. Because the statute provided no cause of action, the clerks could not sue for relief. *Id.*

*Christian County* applies here. For the reasons stated above, the relevant statute in this case creates no independent cause of action for the county clerks. The Department of Revenue, not the county clerks, possess authority to enforce the statute. Plaintiffs may have constitutional standing, but that was never at issue in this case. They do not, however, have authority to sue under Kentucky law.

C. The Sixth Circuit's ruling in *Oakland* has foreclosed Plaintiffs' arguments that the charter exemption doesn't apply to the transfer tax.

Assuming *arguendo* that Plaintiffs have the authority to prosecute this action in federal court, their claim still must be dismissed because the charter exemption allows Defendants to avoid paying the transfer tax.

In their many filings, Plaintiffs rely primarily on an interpretation of "all taxation" that would fail to exempt Defendants from the Kentucky transfer tax. By Plaintiffs' reading, "all taxation" is a term of art that includes only direct–and not excise–taxes. (Doc. #48, at 10). In making this argument, Plaintiffs cite *United States v. Wells Fargo*, 485 U.S. 351 (1988), which involved a statute that exempted *property* from all taxation. The statute at issue in this case, by contrast, exempts entire entities–specifically, the Defendants–from all taxation.

This entity vs. property exemption made all the difference to the Sixth Circuit in *Oakland v. Federal Housing Finance Agency*, 716 F.3d 935 (6th Cir. 2013) (cert. denied, 134 S. Ct. 353 (2013)). *Wells Fargo*, wrote the circuit, applied only to exemptions from

6

property taxes. Those exemptions had a historically understood meaning that limited their application to direct taxes. The exemption at issue in *Oakland* however, exempted whole entities from all taxation. And when the law says that an entity is exempted from all taxation, the reach is clear: the entity need not pay any taxes.

*Oakland* settles the matter. The defendants in the *Oakland* case are the same Defendants here, and the exemption at issue in that case is the same exemption at issue here. The "common sense, non-technical interpretation of 'all taxation' has to include the State and County real estate transfer taxes." *Id.* at 940. Plaintiffs have not attempted to distinguish *Oakland* from this matter, and there is little reason to suppose a distinction exists. Defendants' statutory charter exempts them from all taxation. Consequently, their failure to pay the real estate transfer tax is entirely legal.

Alternatively, Plaintiffs argue that a carve-out exception applies–that there's an exemption to the exemption. Defendants' charter provides that the entities will be exempted from all taxation, "except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed." 12 U.S.C. S. 1723a(c)(2). Plaintiffs view the real estate transfer tax as a tax on real property, such that it falls within this exception and subjects Defendants to the tax.

The Sixth Circuit also addressed that argument in *Oakland* and found it wanting. "[T]he transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property." *Oakland*, F.3d at 939, n.6. The Circuit could not have been clearer: the real estate transfer tax is not a tax on real property, so the real property exception does not apply.

7

D.   The charter exemption does not violate the U.S. Constitution

Perhaps sensing defeat after the Sixth Circuit's *Oakland* decision, the Plaintiffs advanced numerous theories regarding why the charter exemption is unconstitutional. Plaintiffs reason that the charter exemption violated the Commerce Clause, the Tenth Amendment, and "principles of federalism."  Plaintiffs also encouraged the Court to adopt strict scrutiny review of the charter exemption, and argued that Congress could not exempt an entity from taxation unless constitutional tax immunity under Article VI applied.

1.   The exemption is appropriate under the Commerce Clause.

Plaintiffs' efforts to show that the exemption runs afoul of the Commerce Clause are unconvincing.  First, if, as the Plaintiffs suggest, the exemption upsets the delicate constitutional balance between the states and the national government, there should be at least one instance of another court tossing out the exemption as an illegitimate exercise of congressional power.  Plaintiffs directed the Court's attention to precisely zero.

In fact, at least one other district court in the Sixth Circuit has had the opportunity to address Plaintiffs' constitutional arguments, and that court rejected them.  In *Bd. of Comm'rs of Montgomery Cnty., Ohio v. Fed. Hous. Fin. Agency*, 3:12-CV-245, 2013 WL 5755420 (S.D. Ohio Oct. 23, 2013), the court determined that the tax exemption at issue in this case was an appropriate exercise of Congress's powers under the Commerce Clause.

Plaintiffs advance two arguments that the Commerce Clause doesn't permit the relevant tax exemption: first, that the exemption affects a primarily intrastate activity–the taxation of real estate transfers; second, that the exemption commandeers state resources by forcing county clerks to record deeds without collecting a fee.

8

The first of these arguments is unsupported by the case law. As the Supreme Court has held, "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *United States v. Lopez*, 514 U.S. 549, 559, (1995). If an activity does "substantially affect" interstate commerce, then regulating it under the Commerce Clause is proper. *Id.* It's difficult to imagine an activity that so obviously affects interstate commerce as a corporation federally chartered to encourage "stability in the secondary market for residential mortgages" and "access to mortgage credit throughout the nation." 12 U.S.C. 1716.

Plaintiffs obscure this fact by focusing on the Kentucky state tax but ignoring the national mortgage market. Defendants weren't chartered to interfere with the state of Kentucky's prerogative to collect taxes. They were chartered to assist Congress in regulating the national mortgage market. The exemptions' effect on the state transfer tax is incidental. Plaintiffs note that the "Transfer Taxes...are indisputably intrastate." (Doc. #87, at 11). The Court agrees, but fails to see why this matters: Congress isn't regulating Kentucky's transfer taxes; it is regulating the secondary mortgage market.

Plaintiffs' logic, if taken to its natural end, would invalidate every single instance of federal regulation that incidentally affected intrastate activities. The Food and Drug Administration could no longer prevent certain drugs from entering the market, as this exercise of power incidentally affects the "intrastate activity" of doctors prescribing drugs to patients. The Environmental Protection Agency's regulation of the water supply would be illegitimate, as the agency sometimes mandates particular types of testing and filtration in intrastate water supplies. *See* 40 C.F.R. 141. This is not what the Commerce Clause requires.

Plaintiffs' second Commerce Clause claim revolves around the idea that Defendants are somehow coopting state actors without paying the fee. If, as Plaintiffs argued, Defendants were somehow coopting the county clerks, Plaintiff doesn't explain why the payment of the fee is especially relevant. Coopting state resources is coopting state resources, regardless of whether the coopting entity pays the state for its services.

Even if the Court ignores this confusing omission, Supreme Court precedent offers nothing to buttress Plaintiffs' claims here. In *New York v. United States*, 505 U.S. 144, 166 (1992), the Supreme Court rejected federal government efforts to commandeer state officials. In an effort to clean up radioactive waste, Congress offered the state of New York two options: either it could take title to the waste and dispose of it, or it could dispose of the waste in accordance with federal regulations. *Id.* at 176. The Supreme Court held that forcing the state to take title to radioactive waste (option 1), or forcing the state to dispose of the waste in accordance with Congress's wishes (option 2) were unacceptable. *Id.* In either case, Congress forced the state to do something. *Id.* The Court found this unacceptable in our federal system.

Plaintiffs view the tax exemption in this case as akin to the regulatory regime established by Congress in *New York*. "Exemptions would require some action on the part of County Clerks who would be required to record deeds from the Defendants free of charge; this is tantamount to a 'commandeering' of local services." (Doc. #87, at 10-11). Plaintiffs apparently misunderstand *New York*'s holding. In that case, a federal law imposed mandates on a state government. Plaintiffs cannot point to a federal law that does the same here. The county clerks may be "required to record deeds," as Plaintiffs argue, but the relevant question is: Required by whom? The answer is obvious: Kentucky law.

Whatever recording requirements exist, they are the requirements of the Commonwealth of Kentucky, not the United States government. *New York* is inapplicable when, as here, the required state or local action springs from state–rather than federal–law.

It is true that the county clerks cannot collect fees because of the existence of the tax exemption. But this is ultimately irrelevant.[1] There is nothing about *New York* or related cases that suggests an incidental tax exemption from an activity *required by state law* violates the Commerce Clause. Plaintiffs fail to muster any evidence to the contrary, and the Court is certain that none exists.[2]

### 2. Plaintiffs' remaining constitutional claims also fail.

In the absence of a convincing argument on the case law, Plaintiffs compile a hodgepodge of random constitutional claims. These read more like a theoretical piece in the *Yale Law Journal* than a legal argument. Plaintiffs note, for example, that the power to tax is of utmost importance to the states, and that principles of federalism enshrined in the Tenth Amendment counsel against federal interference with state taxation. (Doc. # 60, at 4-6; Doc. # 87, at 14-15). This is all well and good, but it's not especially relevant. Principles of federalism may counsel the Court in one direction or another, but principles

---

[1] Without passing judgment on issues not before the Court, some explanation may resolve Plaintiffs' confusion. Imagine that instead of exempting Defendants from a tax, the Defendants' charter required county clerks to collect a tax, the proceeds of which would fund down payments for low-credit home buyers. This is the sort of regulatory activity that *New York* stands against: forcing state government actors to effectuate a federal regulatory program. The tax exemption, by contrast, simply exempts the Defendants from some of the consequences of state law.

[2] While not legally relevant in this case, the Court reminds Plaintiffs that because the recording requirements are imposed by Kentucky law, they can be relaxed or changed by Kentucky law. Kentucky could modify or eliminate the recording requirements, or they could impose the recording fee on another party to a real estate transaction. Regardless, the question under Supreme Court precedent is whether the federal government requires state actors to do anything, and the answer here is unquestionably "no."

of federalism do not, by themselves, create legal rules applicable to this case. There is no federal interference in the state's power to tax, here; there is merely a statutory exemption from taxation for two federally chartered entities. Plaintiffs make no effort to show that this statutory exemption counts as a particularly pernicious instance of interference in the state's power to tax. Instead, they wax poetic about constitutional theory and apparently hope the Court will connect the legal dots for them. This the Court will not do.

Unfortunately, Plaintiffs' claims about federalism and the Tenth Amendment are not the last instances of this sort of reasoning. In an effort to convince the Court to apply strict scrutiny to the tax exemption at issue, here, Plaintiffs claim that a state's police powers are as fundamental to the state as an individual's right to be free of race-based discrimination. (Doc. #87, 15-18). Plaintiffs then fail to do any of the following: provide a single legal citation to support this proposition; show (or even try to show) that the tax exemption detracts from the state's police powers; indicate that a single court has applied the level of scrutiny that the Plaintiffs suggest that the Court adopt. The Plaintiffs then cite *United States v. Morrison*, 529 U.S. 598, 608 (2000), which is odd in two respects: first, *Morrision* involved a federal statute regulating domestic violence, a textbook example of an issue that falls to the state's police power, see *Morrison*, 529 U.S. at 615; second, the phrase "strict scrutiny" never once appears in the Supreme Court's opinion, and levels of scrutiny are only ever discussed by the dissenting opinion which is not binding on the Court. *Morrison*'s relevance to the strict scrutiny issue remains a mystery.

Finally, the Court addresses the claim that because the charters are not federal instrumentalities, they cannot enjoy federal tax immunity. (*See*, Doc. #48, at 30 ("Once the federal government privatized the former federal instrumentalities, Fannie and Freddie no

12

longer constitutionally qualified for their prior statutory exemption from state and local taxation.")). Plaintiffs again confuse the issue.

First, Plaintiffs cite language from *U.S. v. New Mexico*, 455 U.S. 720 (1982), which reads as follows: "Tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself...or [an] instrumentality." Plaintiffs apparently think this settles their case: in their view, Defendants are not federal instrumentalities and therefore are not entitled to tax immunity.

The Court doesn't pass judgment on whether Defendants are federal instrumentalities, and therefore whether constitutional tax immunity protects them from the transfer tax. It doesn't need to: tax immunity, as the *New Mexico* court explained, is a constitutional doctrine that protects federal entities. *Id.* at 734. But tax immunity is entirely different from a statutory tax exemption: each may have the same effect, but each is rooted in an entirely different provision of the Constitution. Tax immunity derives from the Supremacy Clause of Article VI, which prohibits the states from laying a tax "directly upon the United States." *New Mexico*, 455 U.S. at 733. The tax exemption here comes from a statute, and the power to legislate via statute is vested "in a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const. art. I, § 1.

Defendants need not enjoy the tax immunity of Article VI to be protected by a statute that Congress legislated under Article I. *New Mexico* is ultimately inapplicable here: it was a case about the reach of tax immunity under Article VI. This case is about the reach of a statutory exemption that Congress enacted pursuant to Article I.

Plaintiffs misrepresent the clear case law to this effect. Defendants rely extensively on *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339 (1968), a case

13

that determined whether a particular bank was subject to a state tax. *Id.*. Ultimately, the Court held that the tax did not apply to the bank, but its reasoning clearly support Defendants' position. The Court based its opinion on a statute–which, again, is enacted under Congress's Article I legislative powers–regarding how banks should be taxed. *Id.* at 343-44. Because the statute did not permit the tax in question, the bank didn't have to pay the state tax. *Id.* at 348.

Plaintiffs argue that the case supports their position, because, citing language from *First Agricultural*, the case "involved a state's power to tax national banks–entities which were indisputably *federal instrumentalities.*" Doc. #48, at 33. The suggestion that all national banks are indisputably federal instrumentalities is unquestionably false. In fact, the Supreme Court in *First Agricultural* was reviewing the decision of a lower court that explicitly held that national banks were not, in fact, federal instrumentalities. *Id.* at 341. Further, one of the issues presented to the Court–and discussed at length in the dissent–was whether national banks no longer qualified as federal instrumentalities (apparently, at some time in the past, they did so qualify). *Id.* But the Supreme Court explicitly refused to rule on that issue, because it didn't need to. The statute so clearly exempted the bank from state taxation that the Supreme Court found "it unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities." *Id.* This case really settles the matter: if, as Plaintiffs argue, constitutional tax immunity and statutory tax exemption are entirely coextensive, then why would the Supreme Court decide that it need not consider constitutional immunity to hold that an entity was exempt from state taxation? Plaintiffs did not, and cannot, provide a good answer.

## IV.    CONCLUSION

The charter exemption is constitutional, and appropriately construed, exempts Defendants from paying the Kentucky transfer tax.  Accordingly,

**IT IS ORDERED** that:

(1)    Plaintiffs' Motion for Partial Summary Judgment (Doc. #46) is hereby **denied**.

(2)    Defendants' Motion to Dismiss (Doc. #37) is hereby **granted**.

(3)    A Judgment shall be entered contemporaneously herewith.

This 17th day of January, 2014.

Signed By:
David L. Bunning
United States District Judge

\\156.125.121.215\bunning$\DATA\Opinions\Lexington\12-220 MOO granting MTD.wpd